**Wendel V. Hall,** DC Bar No. 439344
wendel@halllawoffice.net
HALL LAW OFFICE, PLLC
1150 18th Street NW, Suite 1030
Washington, DC 20036-3850
Phone: 202-507-8861

**Tracy M. McGovern**, OSB No. 935349
Email: mcgovern@fdfirm.com
FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, PC
2592 East Barnett Road
Medford, OR  97504
Phone: (541) 772-2333
Fax:    (541) 779-6379
    Of Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| LORENZO CORTES-DIAZ and JOSE MANUEL CORTES-DIAZ, individuals,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>DL REFORESTATION, INC., an Oregon Business corporation,<br><br>　　　　　　　　　Defendant. | Case No.:  1:20-cv-666-CL<br><br>DEFENDANTS MOTION FOR SUMMARY JUDGMENT<br><br>Oral Argument Requested |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

### I.	INTRODUCTION

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant DL Reforestation respectfully moves for entry of summary judgment in its favor. Plaintiffs advance a plethora of claims, which boil down to the assertion that they should have been paid for travel and commuting time even though they spent the time drinking coffee, viewing the Internet, and listening to music. These claims fail as a matter of law. So too do Plaintiffs' cognate claims under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801 *et seq.* Finally, Plaintiffs cannot create a genuine issue of material fact as to their claim that Defendant retaliated against them because Plaintiff Lorenzo Cortes Diaz used workers' compensation insurance.

## II.     STATEMENT OF FACTS

DL Reforestation, Inc. is a small, family-owned reforestation services company. Deposition of DL Reforestation (Exhibit 1) (Rule 30(b)(6)), Tr. at 16; ll. 23-25 ("DL Dep., Tr. at 16, ll. 23-25").  It is owned by Domingo Lopez and his sons, Armando and Ubaldo Lopez. *Id.* For many years, they have operated together. DL is based in Medford, Oregon. It performs work in Oregon, California, Nevada, and Medford. DL Dep., Tr. at 19, ll. 1-5. It works for various agencies of the federal government and for private landowners. DL Dep., Tr. at 20, ll. 19-25; *id.* at 21, ll. 8-13.

DL's core activity for these customers is to clear the land of trees (typically pine trees) to achieve environmental and land management objectives. DL Dep., Tr. at 16, ll. 20-25; *id.* at 17, ll. 1; *id.* at 21, ll. 14-24; Deposition of Jose Manuel Cortes Diaz, (Exhibit 2) Tr. at 33, ll. 3-6 ("JMCD, Tr. at 33, ll. 3-6"). The work of DL's forestry workers is to cut down pine trees with a chain saw and then pile them up. JMCD, Tr. at 31, ll. 13-15. They do not plant seedlings or perform any other activities related to the cultivation of trees for harvest. Their work is best characterized as "land management." JMCD., Tr. at 33, ll. 1-12.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Like many other companies in the reforestation industry, DL has faced chronic labor shortages. DL Dep., Tr. at 17, ll. 10-15. DL therefore turned to the H-2B visa program to meet its need for seasonal labor. The H-2B Program allows U.S. employers to hire foreign nationals to work temporarily in the United States. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b). The H-2B Program is "used primarily by small businesses, including landscaping, hotel, construction, restaurant and forestry businesses." *Bayou Lawn & Landscape Servs. v. Oates*, 713 F.3d 1080, 1083 (11th Cir. 2013). The number of H-2B visas that the State Department may issue in any given fiscal year is capped at 66,000. 8 U.S.C. § 1184(g)(1)(B). This limit is further divided into 33,000 visas for the first half of the fiscal year and 33,000 visas for the second half. 8 U.S.C. § 1184(g)(10). When the allocated visas run out, only congressional action can provide more. That means delays in the entry of workers or that some will be left out entirely.

DL has been using the H-2B Program for many years. The same is true of Plaintiffs. Plaintiff Jose Manuel Cortes Diaz, for example, first received a H-2B visa in 2008 to go work for Summit Forestry. JMCD., Tr. at 23, ll. 8-10; *id.* at 24, ll. 5-22. In 2016, he worked for DL pursuant to an H-2B visa. JMCD., Tr. at 27, ll. 19-21. Plaintiff Jose Manuel then returned in 2017. This time, due to a lack of visas, he did not cross into the United States until August 30, 2017. JMCD., Tr. at 45, ll. 8-15. In 2017, his brother, Lorenzo, nine years his junior, came with him. JMCD., Tr. at 15, ll. 11-16; *id.* at 65, ll. 23-25; *id.* at 66, ll. 1-2. They also came in 2018. JMCD., Tr. at 50, ll. 12-16.

DL's hiring process was routine. It first evaluated its need for workers for the upcoming season. If it did not believe it could find enough U.S. workers, it would seek H-2B visas to meet its labor needs. JMCD, Tr. at 50, ll. 14-23; *id.* at 51, ll. 1-5. DL's then-facilitator in Mexico, a company named Monarch Butterfly ("Monarch"), contacted the people to see if they were

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Case 1:20-cv-00666-CL   Document 45   Filed 09/03/21   Page 4 of 17

interested in working for DL and, if so, let them know what they needed to do. DL Dep., Tr. at 39, ll. 1-8; Tr. at 37, ll. 1-25; JMCD, Tr. at 51, ll. 6-23. Monarch provided the workers with complete disclosures of the terms and conditions of the work, including, out of an abundance of caution, complete disclosures under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801. JMCD, Tr. at 43-47. This happened the same way in both 2017 and 2018. JMCD, Tr. at 51, ll. 9-23.

During the 2017 and 2018 seasons, Plaintiffs lived in Medford with their cousin, her husband, and their kids at 439 Benson Street. JMCD, Tr. at 18, ll. 6-12. They had access to vehicles whenever they needed them. JMCD, Tr. at 20, ll. 13-18. Both Plaintiffs had Oregon driver's licenses, JMCD, Tr. at 19, ll. 12-17, *id.* at 20, ll. 25; *id.* at 21, ll. 1-4, and could legally drive in Oregon and in any other place in the United States. Although they had access to transportation, both Plaintiffs chose to utilize DL's offer of free transportation to public accommodations, e.g., hotels open to the general public, in the vicinity of worksites. Deposition of Lorenzo Cortes Diaz, (Exhibit 3) Tr. at 102, ll. 4-7 ("LCD, Tr. at 102, ll. 4-7"). All they had to do was show up at DL's Medford location, put their belongings in the van, and get on.

During the week, DL also provided transportation to and from the "unit," a designated area in which their particular worksite(s) were located on any particular day. DL paid them for their time from the moment the first person in the crew got out of the van to the moment the last person in the crew got into the van to go to the hotel. Deposition of Juan Soberano, (Exhibit 4)*,* Tr. at 32, ll. 18-25 ("Soberano Dep., Tr. at 32, ll. 18-25"); JMCD, Tr. at 131, ll. 2-10. DL did not pay for the time they were traveling to the drop off point in the morning or from the drop off point to the hotel in the afternoon/evening. Soberano Dep.*,* Tr. at 33, ll. 3-15; JMCD, Tr. at 125, ll. 6-13. During this travel, Plaintiffs spent their time "drinking coffee or looking at the phone or listening to music"

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Page 4 of 17

and sleeping. LCD, Tr. at 34, ll. 23-24; *id.* at Tr. at 38, ll. 4-5; *id.* at Tr. at 113, ll. 1-5. None of these activities, of course, were part of the job Plaintiffs were hired to perform. LCD, Tr. at 113, ll. 6-12. Plaintiffs' supervisors, Juan Soberano and their cousin, Lazaro Cortes Diaz, wrote the time down. Neither Plaintiff had any reason to believe that the total hours as recorded were incorrect. JMCD, Tr. at 58, ll. 9-12; LCD, Tr. at 105, ll. 6-19"); they just wanted to be paid for the time spent "drinking coffee or looking at the phone or listening to music" and sleeping. LCD, Tr. at 34, ll. 23-24; *id.* at Tr. at 38, ll. 4-5; *id.* at Tr. at 113, ll. 1-5.

This routine continued until August 20, 2018. On that day, Lorenzo Cortes Diaz suffered a workplace injury when a chainsaw hit a knot and kicked back. Unable to control the kick back, he cut himself on his neck and face. His brother, Plaintiff Jose Manuel Cortes-Diaz, and his foreman, Juan Soberano, provided first aid on the scene and took Lorenzo to the nearest hospital. Juan Soberano interpreted for Lorenzo and took care of all interactions with hospital staff. He alerted SAIF, DL's workers' compensation carrier. Martin Lopez, Armando's brother, came to pick Lorenzo up from the hospital and brought him back to Lorenzo's home in Medford. Lorenzo received all the medical care he needed, and DL paid for it through its insurance carrier. Lorenzo later returned to work. Soberano Dep., Tr. at 23-25.

Meanwhile, Jose Manuel left the hospital with Juan Soberano to go back to work. *Id.* He finished the job at hand and returned to Medford. On September 5, 2018, Juan Soberano drove Jose Manuel to DL's offices. Jose Manuel met with Armando Lopez alone. Jose Manuel announced that he wanted to go back to Mexico "a propria cuenta" or on his own and on good terms with DL so as to be considered for work in the 2019 season. JMCD, Tr. at 48-49. He explained that his brother's injury weighed on him and that he needed to go back to recover. DL agreed and provided him out-processing paperwork. One form asked Jose Manuel if DL had paid

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

everything that it owed him. Jose Manuel signed this and confirmed during his deposition that that statement was true. DL provided him reimbursement for travel expenses back to Jose Manuel's home in Mexico. JMCD, Tr. at 118, 127-130. Later, Plaintiffs filed this lawsuit.

### III.   ARGUMENT

#### A.   Legal Standard For Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56. Substantive law on an issue determines the materiality of a fact. *T. W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

#### B.   Summary Of Argument

"Ordinary home to work travel is not compensable under the FLSA, regardless of whether or not the employee works at a fixed location." *Imada v. City of Hercules*, 138 F.3d 1294, 1296 (9th Cir. 1998). Plaintiffs, under various theories, are attempting to recover for home to work travel. Such travel may be compensable work if the employee works during the commute (such as a driver). *Rutti v. Lojack Corp.*, 596 F.3d 1046, 1053 (9th Cir. 2010) ("[C]ommuting is not compensable unless the employees show that they perform additional legally cognizable work while driving to their workplace.") Plaintiffs did not perform additional legally cognizable work

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

while traveling. Rather, as would be expected, they spent their time "drinking coffee or looking at the phone or listening to music" and sleeping, LCD, Tr. at 34, ll. 23-24; *id.* at Tr. at 38, ll. 4-5; *id.* at Tr. at 113, ll. 1-5. This is not compensable work under either the Fair Labor Standards Act or Oregon wage and hour law.

Plaintiff also argues that DL did not comply with the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801 *et seq.* ("MSPA"). MSPA applies to "forestry workers who raise trees as a crop for harvest are engaged in 'agricultural employment' for purposes of the Act." *Bresgal v. Brock*, 843 F.2d 1163, 1166 (9th Cir. 1987). It does not, however, apply to forestry workers who do not "raise trees as a crop." *Id.* DL's forestry workers engage in fuel reduction and/or environmental management. They are not engaged in "agricultural employment" and MSPA does not apply.

Even if it did, DL complied in full with MSPA's requirements in the course of ensuring its compliance with the H-2B Program regulations: DL disclosed the terms and conditions in writing; DL complied with those terms and conditions; and DL paid the workers when and as due. DL complied in full with MSPA's requirements.

  **C.**  **The Court Should Enter Summary Judgment As To Plaintiff's Wage Claims**.

A central concept to any wage and hour law is "work." Work was defined originally in *Tenn. Coal Co. v. Muscoda*, 321 U.S. 590, 64 S. Ct. 698 (1944). Work, according to the Supreme Court, was "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Id.* at 598. The term "work" was to be applied as the word as "commonly understood." *Id.* This definition is used in Oregon law. *See Margulies v. Tri-County Metro. Transp. Dist. of Or.*, No. 3:13-cv-00475-PK, 2015 U.S. Dist. LEXIS 84672, at *23 (D. Or. June 30, 2015) ("For these

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

reasons, I find the definition of 'work' first articulated in *Tennessee Coal* and subsequently adopted in *Leonard* applicable to ORS 653.268.")

Thus, a commute from a bus driver's end point back to the starting point is not compensable work under either federal or Oregon law. *Margulies*, 2015 U.S. Dist. LEXIS 84672, at *23. So, too, with a morning commute. Courts routinely hold that "commuting is not compensable unless the employees show that they perform additional legally cognizable work while driving to their workplace." *Rutti v. Lojack Corp.*, 596 F.3d 1046, 1053 (9th Cir. 2010) (time spent traveling in employer-provided vehicle to first job site of day and from last job site of day, which varied daily, was non-compensable travel time); *Imada v. City of Hercules*, 138 F.3d 1294, 1296 (9th Cir. 1998) ("Ordinary home to work travel is not compensable under the FLSA, regardless of whether or not the employee works at a fixed location."); *see also Balestrieri v. Menlo Park Fire Prot. Dist.*, 800 F.3d 1094, 1101 (9th Cir. 2015); *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1286 (10th Cir. 2006) ("Employers are therefore not required to compensate employees for time spent commuting between home and their workplace, or for any activities that are preliminary to or postliminary to their principal activities at work."); *Gomley v. Crossmark, Inc.*, No. 1:13-cv-00420-BLW, 2015 U.S. Dist. LEXIS 54037, at *5 (D. Idaho Apr. 22, 2015) ("Generally, ordinary home-to-work travel is not compensable under the FLSA.").

The issue to be determined, then, is whether Plaintiffs performed work - "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business" – for which they were not compensated while commuting. The answer is "no." Plaintiff Lorenzo Cortes Diaz explained they engaged in activities such as sleeping, sipping coffee, listening to music, viewing the Internet etc. The activities do not qualify as "work" even under the broadest conception of the term "work"

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

as it is commonly understood. That is why Plaintiff Jose Manuel Cortes Diaz repeatedly testified that his timesheets reflected all the "work" he did as that term is commonly understood, JMCD, Tr. at 125, ll. 6-13, but did not include the travel time during which he did not perform any forestry services. That is why he testified that DL paid him for all his "work." JMCD, Tr. at 125, ll. 12-13. Under neither federal or Oregon law are Plaintiffs entitled to be paid for sleeping, sipping coffee, listening to music, and surfing the internet because it does not constitute "work."

There is an additional reason that Plaintiffs' travel time claims fail. Plaintiffs were hired to perform forestry work – chain saw and hand piling work. "The basis of the employ[e]e-employer relationship remains a contractual one and, in order to prevail under the Wage Claim Act, an employ[e]e must prove the agreement, express or implied, which gives him the right to expect compensation." *Leonard v. Arrow-Tualatin, Inc.*, 76 Or. App. 120, 123, 708 P.2d 630, 632 (1985). Under the FLSA, time spent performing the work they were hired to do (*i.e.*, their principal activity and activities that are integral and indispensable to it) is compensable. *Balestrieri*, 800 F.3d at 1101.

Plaintiffs have not proven any agreement that "gives [them] the right to expect compensation" for sleeping, sipping coffee, talking, surfing the internet, or listening to music. Most significantly, neither DL's nor Plaintiffs' behavior gives the slightest indication that either party considered the travel time to be work. DL did not pay for travel time, even though it was very careful to make sure that it counted all compensable hours. *See* Soberano Dep., Tr. at 33; ll. 1-15 (same). DL's policy for tracking time is more generous than the law requires in that it pays for lunches and walking time. DL was careful to make sure all time that it agreed or was required to pay for was, in fact, paid for.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff's behavior betrays the same understanding of work. Obviously, Plaintiffs were and are concerned about being paid for all their work. They were aware of their pay and when given the chance to bring errors to DL's attention, they passed. JMCD, Tr. at 50, ll. 4-8. Indeed, they affirmatively represented that they were paid correctly. Plaintiff's lawyers are likely to argue that these representations are irrelevant; after all, Plaintiffs are not lawyers. Plaintiffs' practical understanding of what they were hired to do and the activities for which they agreed to be paid as reflected in their behavior negates the idea that they had entered into an agreement of any kind to be paid for drinking coffee, listening to music etc. The lawyers' argument that they did not know they had entered into an agreement to be paid for certain activities shows that they did not enter in the agreement necessary under Oregon law. Plaintiffs were hired to perform cutting and piling of trees and they were paid for the time spent in that activity and activities that are integral and indispensable with it.

### D. Defendant Complied With MSPA.

#### 1. MSPA Does Not Cover Plaintiffs.

MSPA covers "migrant" or "seasonal" "agricultural" workers. Being employed in "agriculture" is the *sine qua non* of MSPA coverage. In 1987, the Ninth Circuit announced its conclusion that manual "forestry workers who raise trees as a crop for harvest are engaged in 'agricultural employment' for purposes of" MSPA. *Bresgal v. Brock*, 843 F.2d 1163, 1166, 1172 (9th Cir. 1987). The Ninth Circuit codified this holding in an injunction requiring the Department of Labor to enforce MSPA as to "predominantly manual forestry work, including but not limited to tree planting, brush clearing, precommercial tree thinning and forest fire fighting." *Id.* at 1172. The scope of the injunction should, of course, be read in light of the Ninth Circuit's rationale. The injunction is consistent with the limitation of MSPA to "forestry workers who raise trees as a crop

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

for harvest." Tree planting, brush clearing, and tree thinning are all parts of the process of raising trees for harvest and are clearly within the Ninth Circuit's rationale.[1] There is no warrant for interpreting those terms to apply to forestry workers who have no connection to "rais[ing] trees as a crop for harvest."

Plaintiff's activities relate only to environmental land management. JMCD, Tr. at 33; ll. 3-6. They had no connection whatsoever to the raising of trees for harvest and therefore fall outside of the scope of MSPA as interpreted by the Ninth Circuit in *Bresgal*.

### 2. Defendant Complied In Full With MSPA.

That MSPA does not cover Plaintiffs since they were not in "agricultural employment" does not mean that Defendant did not comply with MSPA anyway. MSPA's terms are broadly consistent with those of the H-2B Program and so Defendant's compliance efforts are designed to take into account both bodies of law. That way Defendant's legal exposure is minimized.

"The federal Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") was passed by Congress for the stated purpose, in part, of assur[ing] necessary protections for migrant and seasonal agricultural workers, agricultural associations, and agricultural employers. The AWPA authorizes statutory damages and provides for a private right of action, stating that any person aggrieved by a violation of the AWPA may file suit in any district court of the United States[.]" *Martinez-Sanchez v. Anthony Vineyards, Inc.*, No. 1:19-cv-01404-DAD-JLT, 2020 U.S. Dist. LEXIS 15785, at *11-12 (E.D. Cal. Jan. 29, 2020).

Plaintiffs' claims under MSPA are, for the most part, cognate to their underlying claim to be paid for drinking coffee, viewing the internet, and listening to music while traveling to and from work and to the hotels where they stayed. Plaintiff's claims are refuted by the record:

---

[1] The rationale for including "forest fire fighting" in the list is obscure.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

- Plaintiffs allege that they did not receive written disclosures of the terms and conditions of employment. First Amended Complaint, ¶ 99. They did receive written disclosures containing all the required information in 2017 and 2018.

- Plaintiff alleges that Defendant did not post workers' rights posters. First Amended Complaint, ¶ 100. That is incorrect.

- Plaintiffs allege that Defendant did not make adequate time records. First Amended Complaint, ¶ 101. That is incorrect. Defendants time sheets reflect all hours worked. JMCD, Tr. at 55, ll. 13-19.

- Plaintiff alleges that Defendant provided housing that did not comply with required standards. First Amended Complaint, ¶ 102. Defendant arranged for hotel accommodations for Plaintiffs in various chain hotels and other accommodations open to the general public. Defendant did not own or control these hotel chains or public accommodations. MSPA imposes the duty to comply with health safety regulations only on those who own or control the facilities. 29 U.SC. § 1823(b)(1). In this case, the chain owners or the owner of any other accommodations would have the duty under state and federal law to maintain the premises safely. If the workers were aggrieved by the commercially available public accommodation housing, the appropriate remedy is provided by those laws against the person(s) who own or control them. Because Defendant did not own or control the housing, § 1823 does not apply to it.

Plaintiffs allege that Defendant breached its "working arrangement" with Plaintiffs. First Amended Complaint, ¶ 103(a)-(h). This is a grab bag of alleged violations. The scope of the "working arrangement" is defined by the mutual understanding of the parties. *See Doe v. D.M. Camp & Sons*, 624 F. Supp. 2d 1153, 1169 (E.D. Cal. 2008) ("The Southern District of Texas has said,

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

'the working arrangement, then, is the understandings of the parties, given their mutual knowledge and conduct, as to the expected terms and conditions of employment.'")

- Here, Plaintiffs' behavior betrays no indication that they thought Defendant in any way violated the working arrangement. Both Plaintiffs were given a chance to identify any potential problems with Defendant's compliance and both stated in writing that Defendant had complied in full. JMCD, Tr. at 118, 127-130.  Whether or not an independent legal violation occurred (and none did), Defendant did not violate the working arrangement as understood by the parties.

- The same arguments as to the written disclosures applies to Plaintiff's claims under Oregon law. First Amended Complaint, ¶¶ 107-109. All necessary disclosures were made.

### D. The Court Should Enter Summary Judgment In Defendant's Favor As To Plaintiffs Workers' Compensation Retaliation Claims.

On or about August 20, 2018, Plaintiff Lorenzo Cortes Diaz was injured in a chainsaw accident. LCD, Tr. at 96, ll. 24-25; 97, ll.1-6. He received medical treatment for his injuries and eventually returned to work. JMCD, Tr. at 84, ll. 10-19. He received workers' compensation benefits including payment for medical expenses and income replacement, even during the time he was working in hemp enterprises. LCD, Tr. at 62, ll. 3-24.

Neither Plaintiff returned to work for Defendant in 2019 or thereafter. Plaintiffs allege that this decision was in retaliation for seeking workers' compensation benefits. Defendant is entitled to summary judgment on these claims.

Federal courts in Oregon apply the *McDonnel-Douglas* burden shifting framework to claims of workers' compensation retaliation. *Alvarez v. Ecolab Inc.*, No. 6:13-cv-01718-MC, 2014 U.S. Dist. LEXIS 165495, at *12 (D. Or. Nov. 25, 2014). "Under the *McDonnell Douglas* framework, if a plaintiff meets his or her initial prima facie burden identified above, '[t]he

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the" adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If defendant meets this burden, then the burden returns to plaintiff to show that the alleged legitimate, nondiscriminatory reason for the adverse employment action is merely a pretext for discrimination.'" *Id.*

A *prima facie* workers' compensation retaliation claim has three elements: "(1) Plaintiff invoked, applied for benefits, or utilized the workers' compensation system; (2) Defendant took a material adverse employment action) with respect to Plaintiff's terms or conditions of employment]; and (3) a substantial factor in Defendant's decision to take this action was that Plaintiff invoked, applied for benefits, or utilized the workers' compensation system." *Williams v. Freightliner, LLC*, 196 Or. App. 83, 90, 100 P.3d 1117, 1121 (2004); *Stanich v. Precision Body & Paint*, 151 Or. App. 446, 457, 950 P.2d 328, 335 (1997). "To prevail in a 'mixed motive' claim, a plaintiff must be able to show that he or she 'would not have been fired but for the unlawful dmotive of the employer. *Hardie v. Legacy Health Sys.*, 167 Or. App. 425, 435, 6 P.3d 531, 537 (2000).

Taking Plaintiff Jose Manuel Cortes Diaz' claim first, it is clear that he does not even state a *prima facie* case. The first element requires Plaintiff to show that he invoked workers compensation benefits. He did not. JMCD, Tr. at 110, ll. 23-25. Here, he did not actually invoke the Worker's Compensation system. The term "invoke" is defined in OAR 839066-0105 (7). It is defined as follows: "Invoke as used in ORS 659A.040, includes but is not limited to, a worker's reporting of an on-the-job injury or a perception by the employer that the worker has been injured on the job or will report an injury." However, ORS 659.040 (1) states in pertinent part:

> It is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment **because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS Chapter 656 (Worker's Comp. statutes) or has given testimony under the**

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**provisions of those laws. (emphasis added)**

In short, there is no derivative invocation of the workers' compensation system. Plaintiff Jose Manuel did not invoke the system and therefore has no claim.

Moreover, Plaintiff attributes the decision not to offer work in the future to statements his cousin and supervisor, Lazaro Cortes Diaz, made to Defendant's management. Plaintiff claims that these statements so poisoned the well that Defendant would not have offered him additional work. Plaintiff adds in the claim that workers' compensation was relevant, but never claims that absent the statements from Lazaro Cortes-Diaz, Plaintiff would still not have been asked to return. do with Defendant's decision not to offer further work to Plaintiff Jose Manuel Cortes Diaz.

The situation is slightly different as to Plaintiff Lorenzo Cortes Diaz. Plaintiff Lorenzo was always a marginal worker. Deposition of Armando Lopez, (Exhibit 5) Tr. at 25. Defendant offered him work only because Plaintiff Jose Manuel Cortes Diaz was so capable. *Id*. As Plaintiff Jose Manuel's performance declined, the rationale for employing Plaintiff Lorenzo Cortes Diaz evaporated. At the same time, the same concerns about Lazaro Cortes Diaz' representations about both Plaintiffs played a role. Just as with Plaintiff Jose Manuel, it cannot be said that workers' compensation had anything to do with Defendant's decision not to offer further work to Plaintiff Lorenzo Cortes Diaz.

## IV.    CONCLUSION

The central issue in this case is whether Plaintiffs were entitled to be paid for travel time even though they performed no legally cognizable work. The answer as a matter of law is no. The Court should therefore enter summary judgment in Defendant's favor as to Plaintiffs' federal and state wage and hour claims. The same is true as to Plaintiff's MSPA claims. Plaintiffs were not covered by MSPA as a matter of law, but Defendant nevertheless complied with MSPA's

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

requirements as a result of its H-2B Program compliance efforts. Finally, the provision of workers' compensation benefits simply did not make a difference in Defendant's decision not to offer Plaintiffs H-2B in 2019. By then, their work performance was marginal and caused friction with their cousin, an important supervisor for Defendant. Then, Plaintiff Jose Manuel added dishonesty to the mix. Especially in light of a visa shortage, Plaintiffs were not going to be offered work in 2019 not matter what happened with respect to workers' compensation.

For the foregoing reasons and such others as may appear to the Court, Defendant respectfully requests that the Court enter summary judgment in its favor as to all claims and all counts of Plaintiffs' First Amended Complaint.

Dated this 3rd day of September, 2021.

> FROHNMAYER, DEATHERAGE, JAMIESON,
> MOORE, ARMOSINO & McGOVERN, PC
>
> /s Tracy M. McGovern
> Tracy M. McGovern, OSB #935349
> Wendel V. Hall, DC Bar No. 439344
> Of Attorneys for Defendant

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** by sending a copy via the Court's Electronic Filing System to the following:

Mayra A. Ledesma
Corinna Spencer-Scheurich
Northwest Workers Justice Project
812 SW Washington Street, Suite 1100
Portland, OR 97205-3215
mayra@nwjp.org, corinna@nwjp.org

D. Michael Dale
Law Offices of D. Michael Dale
PO Box 1032
Cornelius, OR 97113-1032
michaeldale@dmichaeldale.net

DATED this 3rd day of September, 2021.

                FROHNMAYER, DEATHERAGE, JAMIESON,
                MOORE, ARMOSINO & McGOVERN, PC

                /s Tracy M. McGovern
                Tracy M. McGovern, OSB #935349
                Wendel V. Hall, DC Bar No. 439344
                Of Attorneys for Defendant