# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### MEDFORD DIVISION

**LORENZO CORTES-DIAZ and
JOSE MANUEL CORTES-DIAZ,**

Case No. 1:20-cv-00666-CL

Plaintiffs,

v.

**OPINION AND ORDER**

**DL REFORESTATION, Inc.,**
*an Oregon business corporation,*

Defendant.

---

CLARKE, Magistrate Judge.

Plaintiffs Lorenzo Cortes-Diaz and Jose Manuel Cortes-Diaz bring claims against the Defendant, DL Reforestation, Inc., ("DL"), their former employer. The case comes before the Court on cross-motions for summary judgment, as well as a Motion to Certify a Question to the Oregon Supreme Court, filed by the Plaintiffs. Full consent to magistrate jurisdiction was filed on November 3, 2020 (#20). The Court held a telephonic oral argument hearing on January 11, 2022. For the reasons below, Plaintiffs' Motion to Certify (#79) is DENIED, Plaintiffs' Motion for Partial Summary Judgment (#47) is GRANTED in part and DENIED in part, and Defendant's Motion for Summary Judgment (#45) is GRANTED in part and DENIED in part.

## SUMMARY

Plaintiffs raise a variety of claims against their former employer, but these cross-motions primarily address the claims challenging Defendant's practice not to compensate Plaintiffs for preliminary work activities, travel time on Sundays, and travel time at the beginning and end of each work-day. The analysis of Plaintiffs' wage claims is complicated by the differences in Oregon state law and the federal Fair Labor Standards Act (FLSA). The main difference between the two is the amendment to the FLSA, called the Portal-to-Portal Act (PTPA). When the Oregon wage and hour laws were codified, the legislature modeled the laws after the PTPA, but did not adopt the PTPA amendments. This distinction in the wage laws requires the defendant to compensate Plaintiffs for their preliminary work activities and their travel time at the beginning and end of each work-day under Oregon law. Moreover, the Defendant is required to compensate Plaintiffs for their travel time on Sundays under both Oregon law and the FLSA, but only to the extent that the travel "cut across" their regular working hours.

## LEGAL STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

## FACTUAL BACKGROUND

Defendant DL Reforestation, Inc. is a small, family-owned reforestation services company. Dep. DL Reforestation (Exhibit 1) (Rule 30(b)(6)), Tr. at 16; ll. 23-25 ("DL Dep., Tr. At 16, ll. 23-25"). It is owned by Domingo Lopez and his sons, Armando and Ubaldo Lopez. *Id.* DL is based in Medford, Oregon. DL performs work in Oregon, California, and Nevada. DL Dep., Tr. at 19, ll. 1-5. It works for various agencies of the federal government and for private landowners. DL Dep., Tr. at 20, ll. 19-25; *id.* at 21, ll. 8-13. DL's core activity for these customers is to clear the land of trees (typically pine trees) to achieve environmental and land management objectives. DL Dep., Tr. at 16, ll. 20-25; id. at 17, ll.1; id. at 21, ll. 14-24; Dep. Jose Manuel Cortes Diaz, (Exhibit 2) Tr. at 33, ll. 3-6 ("JMCD, Tr. at 33, ll. 3-6"). The work of DL's forestry workers is to cut down pine trees with a chain saw and then pile them up. JMCD, Tr. at 31, ll. 13-15. They do not plant seedlings or perform any other activities related to the cultivation of trees for harvest.

Like many other companies in the reforestation industry, DL has faced chronic labor shortages. DL Dep., Tr. at 17, ll. 10-15. DL therefore turned to the H-2B visa program to meet its

need for seasonal labor. The H-2B Program allows U.S. employers to hire foreign nationals to

work temporarily in the United States. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b). The H-2B Program

is "used primarily by small businesses, including landscaping, hotel, construction, restaurant and

forestry businesses." *Bayou Lawn & Landscape Servs. v. Oates*, 713 F.3d 1080, 1083 (11th Cir.

2013). The number of H-2B visas that the State Department may issue in any given fiscal year is

capped at 66,000. 8 U.S.C. § 1184(g)(1)(B). This limit is further divided into 33,000 visas for the

first half of the fiscal year and 33,000 visas for the second half. 8 U.S.C. § 1184(g)(10). When

the allocated visas run out, only congressional action can provide more.

Plaintiffs Lorenzo and Jose Manuel Cortes-Diaz (herein, "Plaintiffs") are brothers. J.

Cortes Decl. ¶ 3; L. Cortes Decl. ¶ 3. Their permanent place of residence is Michoacán, Mexico,

where they have lived most of their lives. J. Cortes Dep. 14:11-22, Ex. 3; J. Cortes Decl. ¶ 4; L.

Cortes Decl. ¶ 4. Plaintiffs were hired in 2017 and 2018 to work for Defendant DL through the

H-2B visa program. J. Cortes Decl. ¶ 5; L. Cortes Decl. ¶ 5. In 2017, Plaintiffs worked for

Defendant from September 5, 2017, through December 12, 2017. J. Cortes' 2017 Terms &

Conditions, Exs. 8, 8E; L. Cortes' 2017 Terms & Conditions Exs. 9, 9E; Plaintiffs' 2017

Termination of Labor Contract, Ex. 12. In 2018, Plaintiffs worked for Defendant starting on

April 4, 2018. J. Cortes' 2018 Terms & Conditions, Exs. 10, 10E; L. Cortes' 2018 Terms &

Conditions, Exs. 11, 11E. Plaintiff Jose Manuel Cortes-Diaz worked through September 17,

2018. J. Cortes' 2018 Termination of Employment, Exs. 14, 14E. Plaintiff Lorenzo Cortes-Diaz

worked through November 30, 2018. L. Cortes' 2018 Termination of Employment, Exs. 13, 13E.

During their employment, Plaintiffs stayed with family members in Medford when they

were not away in the forest working for Defendant. J. Cortes Dep. 18:6-17; 21:11-14, Ex. 3; J.

Cortes Decl. ¶ 6; L. Cortes Decl. ¶ 6. Defendant arranged to pick up Plaintiffs on Sundays from

their Medford residence and transported them to Defendant's headquarters, where Plaintiffs and the other workers loaded up the company vans with the company's chainsaws and other tools that were needed for work that week. *Id.* From there, Defendant would drive workers to lodging near the worksite.[1] J. Cortes Decl. ¶ 9; L. Cortes Decl. ¶ 9. When traveling between the headquarters and lodging, Defendant would stop at stores and gas stations to purchase groceries, supplies, and gasoline for the chain saws. J. Cortes Decl. ¶10; L. Cortes Decl. ¶ 10. Plaintiffs were often assigned the task of filling up gas cans with gasoline for the chainsaws that were to be used at the various worksites. *Id.* The total time this process of loading, supply acquisition, and transportation took varied greatly due to the fact that Plaintiffs worked in many locations across Southern Oregon, Northern California, and Western Nevada. J. Cortes Decl. ¶ 11; L. Cortes Decl. ¶ 11.

During the work week, Plaintiffs were transported by Defendant daily from lodging to and from remote forest worksites in Defendant's vans. Soberano Decl. 35:2-19, Ex. 2; J. Cortes Decl. ¶ 13; L. Cortes Decl. ¶ 13. According to Plaintiffs, their typical workday, not including travel time, began at 5AM and ended at 3PM; a typical workweek was Monday to Friday. J. Cortes' 2017 Terms & Conditions, Exs. 8, 8E; J. Cortes' 2018 Terms & Conditions, Exs. 10, 10E; L. Cortes' 2017 Terms & Conditions, Exs. 9, 9E; L. Cortes' 2018 Terms & Conditions, Exs. 11, 11E. The total time traveled also varied greatly, depending on how close the lodging was to the actual worksite. J. Cortes Decl. ¶ 13; L. Cortes Decl. ¶ 13.

---

[1] Plaintiffs allege that Defendant required Plaintiffs to ride in the company vans. J. Cortes Decl. ¶¶ 7, 13; L. Cortes Decl. ¶¶ 7, 13. Defendant asserts that this transportation was an optional service provided to the workers, which the Plaintiffs availed themselves of voluntarily. Defendant concedes that no worker has ever "opted" to drive themselves to the lodging or the worksite, and it is clear that such an "option" would not be feasible for foreign workers with little to no familiarity with the surrounding areas. Therefore, the Court does not consider this to be a true dispute of fact that is material to the disposition of the case.

Plaintiffs assert and submit declarations to show that Defendant exercised control over

the workers during the transportation in the following ways:

> The Defendant determined where the reforestation work was to be done, which controlled the ultimate destination of the workers' travel. J. Cortes Decl. ¶ 12; L. Cortes Decl. ¶ 12. Defendant required Plaintiffs to ride in the company vans. J. Cortes Decl. ¶¶ 7, 13; L. Cortes Decl. ¶¶ 7, 13. It was Defendant's practice to transport all of its employees from their headquarters to the hotel or motel lodging sites, and then during the work week from those lodging sites to the worksites and back. J. Cortes Decl. ¶ 13; L. Cortes Decl. ¶ 13. Defendant also determined the time at which they would pick up Plaintiffs on Sundays. Plaintiffs had to be ready at the time they were told and did not have flexibility to choose a different time. J. Cortes Decl. ¶ 8; L. Cortes Decl. ¶ 8. Defendant decided what grocery store and gas station to visit and dictated which workers would help load the vans or fill up the gas cans at the gas station. J. Cortes Decl. ¶¶ 9, 10; L. Cortes Decl. ¶¶ 9, 10. Defendant determined the route and any other stops along the route. J. Cortes Decl. ¶ 9; L. Cortes Decl. ¶ 9. During the work week, Defendant similarly decided where Plaintiffs would stay, where they would eat if they went out to eat, when they would depart to the worksites, and if any stops were to be made along the way. J. Cortes Decl. ¶¶ 13, 14; L. Cortes Decl. ¶¶ 13, 14. Plaintiffs also had to follow all company policies when in the vans. J. Cortes Decl. ¶ 14; L. Cortes Decl. ¶ 14. They could not put their feet up and had no control over the radio. *Id.* Plaintiffs were also required to be dressed for work during the time they were travelling and could not elect to wear sweatpants or other comfortable clothing during the ride. *Id.* And, although Plaintiffs did have cell phones and could sometimes make calls or listen to music, they were often in very remote areas and were limited in what personal activities they could use their cell phones for because of poor cell service coverage in these areas. J. Cortes Decl. ¶ 15; L. Cortes Decl. ¶ 15.

Defendant disputes Plaintiffs' characterization of these facts as showing "control" over workers

and instead asserts that these facts show that Defendant offered a generous and convenient

service for the workers' benefit and that Plaintiffs could use the transportation time for "leisure."

On August 20, 2018, Plaintiff Lorenzo Cortes Diaz suffered a workplace injury when a

chainsaw hit a knot and kicked back. Unable to control the kick back, the chainsaw cut into his

neck and face. His brother, Plaintiff Jose Manuel Cortes-Diaz, and his foreman, Juan Soberano, provided first aid on the scene and took Lorenzo to the nearest hospital. Juan Soberano interpreted for Lorenzo and took care of all interactions with hospital staff. He alerted SAIF, Defendant's workers' compensation carrier. Martin Lopez, Armando's brother, came to pick Lorenzo up from the hospital and brought him back to Lorenzo's home in Medford. Lorenzo received all the medical care he needed, and Defendant paid for it through its insurance carrier. Lorenzo later returned to work. Soberano Dep., Tr. at 23-25.

Meanwhile, Jose Manuel left the hospital with Juan Soberano to go back to work. *Id.* He finished the job at hand and returned to Medford. On September 5, 2018, Juan Soberano drove Jose Manuel to DL's offices. Jose Manuel met with Armando Lopez alone. Jose Manuel announced that he wanted to go back to Mexico "a propria cuenta" or on his own and on good terms with DL so as to be considered for work in the 2019 season. JMCD, Tr. at 48-49. He explained that his brother's injury weighed on him and that he needed to go back to recover. Defendant agreed and provided him out-processing paperwork. Defendant provided him reimbursement for travel expenses back to his home in Mexico. JMCD, Tr. at 118, 127-130. Defendant DL also believed that he had family members with medical issues, and that was another reason he needed to return to Mexico. Neither Plaintiff was hired or asked to return to work for DL for the 2019 season.

## REGULATORY BACKGROUND

Oregon's legislature enacted a minimum wage law and established its governing agency, the Industrial Welfare Commission, back in 1913. *Stettler v. O'Hare*, 69 Or. 519, 520, 139 P. 743, 744 (1914), aff'd sub nom. *Simpson v. O'Hara*, 243 U.S. 629 (1917). Almost 25 years later, in 1938, the U.S. Congress established a minimum wage when it enacted the Fair Labor

Standards Act ("FLSA") in response to the Great Depression. *Stein v. Guardsmark, L.L.C., No. 12, Civ. 4739 (JPO),* 2013 WL 3809463, at *4 (S.D.N.Y. July 23, 2013). Two years later, in 1940, the FLSA was amended to mandate that employers pay one-and-one-half times an employee's hourly rate every hour the employee works beyond the standard, forty-hour work week. *IBP, Inc. v. Alvarez,* 546 U.S. 21, 25 (2005). However, neither "work" nor "workweek" were defined in the statute. *Id.*

In time, the federal courts provided a definition to these terms. Pre-1947, the Supreme Court had defined covered "work" very broadly by resolving a series of pay disputes. *See Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590 (1944); *Armour & Co. v. Wantock,* 323 U.S. 126 (1944); *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946). In *Tennessee Coal,* the Supreme Court defined "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Id.* at 598. Subsequently, in *Armour,* the Supreme Court held that an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. 323 U.S. at 133. It noted that refraining from other activities often is a factor of instant readiness to serve, and idleness plays a part in all employment in a stand-by-capacity. "Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer." *Id.* Therefore "exertion" was not necessary for something to constitute "work." *Id.* In *Anderson,* the court defined "workweek" to "includ[e] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Id.* at 690-691.

Congress then passed the Portal-to-Portal Act of 1947 ("PTPA") amending the FLSA by eliminating from compensable "work time" activities performed "prior" or "subsequent" to the "workday" that are not made compensable by contract, custom, or practice, including certain "preliminary" and "postliminary" activities, and time spent "walking, riding, or traveling." *See* 29 C.F.R. §§ 785.50, 790.6 to 790.8. The PTPA did not otherwise change the definition of "work." 29 C.F.R. § 790.6 (". . . The principles for determining hours worked within the "workday" proper will continue to be those established under the Fair Labor Standards Act . . .").

Oregon's modern minimum wage and overtime law, now codified at O.R.S §§ 653.010 to 653.261, was adopted in 1967, and was largely modeled after the FLSA. *Northwest Advancement, Inc. v. State, Bureau of Labor, Wage and Hour Div.*, 96 Or. App. 133, 136, 772 P.2d 934, 937 (1989). For instance, both the Oregon rules and the FLSA declare ordinary "home to work" travel to be non-compensable. O.A.R. 839-020-0045(1); 29 C.F.R. § 785.35. However, in drafting Oregon's law, the legislature did not include the limiting provisions of the PTPA that overruled *Tennessee Coal, Armour*, and *Anderson*, and never has done so since. "Oregon has no statutory equivalent of the Portal-to-Portal Act." *Margulies v. Tri-County Metropolitan Transp. Dist. of Oregon*, Civ. No. 3:13–cv–00475–PK, 2015 WL 4066654, at *7 (D. Or. July 2, 2015).

### DISCUSSION

Defendant DL Reforestation moves for summary judgment on all of Plaintiffs' claims. Plaintiffs move for summary judgment as to their first, second, and third claims, as well as paragraph 103(a) of their fifth claim, related to their allegations that they were not paid for travel time by Defendant DL Reforestation, Inc. Plaintiff also moves to certify a question to the Oregon Supreme Court. For the reasons below, Plaintiffs' motion to certify is denied, Defendant's

motion for summary judgment is granted in part and denied in part, and Plaintiffs' motion for

partial summary judgment is granted in part and denied in part.

    **I.**    **Plaintiffs' motion to certify a question to the Oregon Supreme Court is denied.**

    Pursuant to Oregon's Uniform Certification of Questions of Law Act, O.R.S. § 28.200-

O.R.S. § 28.255 ("UCQL"), this Court may certify a question of law to the Oregon Supreme

Court. O.R.S. § 28.200 provides:

> The [Oregon] Supreme Court may answer questions of law certified
> to it by . . . a United States District Court . . . when requested by the
> certifying court if there are involved in any proceedings before it
> questions of law of this state which may be determinative of the
> cause then pending in the certifying court and as to which it appears
> to the certifying court there is no controlling precedent in the
> decisions of the Supreme Court and the intermediate appellate
> courts of this state.

    Further, Oregon District Court Local Rule 83-14 adopts the standards set forth in *Western*

*Helicopter Services, Inc. v. Rogerson Aircraft Corp.*, 311 Or. 361, 364, 811 P.2d 627, 630

(1991), which provides five criteria for certification:

> 1.  The certification must come from a designated court;
> 2.  the question must be one of law;
> 3.  the applicable law must be Oregon law;
> 4.  the question must be one that "may be determinative of the cause;" and
> 5.  it must appear to the certifying court that there is no controlling precedent in the
>    decisions of [the Oregon Supreme Court] or the Oregon Court of Appeals.

The certifying court objectively determines the first four issues, and the fifth issue is a subjective

judgment. *Id.* at 366. If there is sufficient law for the federal court to make an informed decision

on the issues, certification is unwarranted. *Atchinson v. Howmet Aero., Inc.*, No. 20-35250 (9th

Cir. Nov. 10, 2021); *United States v. Lawrence*, 364 Or. 796, 801, 441 P.3d 587, 589-90 (2019)

(declining to accept certified question because "an Oregon Court of Appeals decision provides

sufficient guidance as to what remains of that question[.]"). Ultimately, "[u]se of the

certification [p]rocedure in any given case rests in the sound discretion of the federal court."

*Micomonaco v. Washington*, 45 F.3d 316, 322 (9th Cir. 1995).

The question proposed by the Plaintiffs asks:

> Whether the term "work" as used under O.R.S. § 653.010(11), is subject to the limitations on the compensability of travel time imposed by the federal Portal-to-Portal Act ("PTPA"), 29 U.S.C. §§ 251 – 262 (1947) or should be interpreted to include travel time by reference to the plain language of Oregon's statute and regulations and federal cases interpreting the Fair Labor Standards Act, 29 U.S.C.§§ 201, et seq., ("FLSA") that were decided prior to the adoption by Congress of the PTPA.

The Court finds that there is sufficient guidance to answer this question definitively without certification to the Oregon Supreme Court.

First, Oregon courts will generally consider federal interpretations of the FLSA's statutory terms when interpreting O.R.S. Chapter 653. *Northwest Advancement, Inc. v. State, Bureau of Labor, Wage and Hour Div.*, 96 Or. App. 133, 136, 772 P.2d 934, 937 (1989). However, federal law is generally not considered to be helpful where the language of the federal statute is different from that of the state statute. *Shea v. Chicago Pneumatic Tool Co.*, 164 Or. App. 198, 206, 990 P.2d 912, 916-917 (Or. Ct. App. 1999) (declining to follow federal decisions that are not consistent with the specific language of the Oregon statutes). Thus, where the statutory terms of Oregon and federal law are not the same, the FLSA provides no guidance for interpreting different Oregon statutory terms.

For example, in *Young v. State of Oregon*, the Oregon Court of Appeals confronted a similar issue in interpreting the phrase "regular rate [of pay]," which is used both in Oregon wage and hour law and the FLSA. 195 Or. App. 31, 40, 96 P.3d 1239, 1244 (2004). The Court of Appeals had adopted the federal "fluctuating work week" standard for calculating overtime for certain salaried employees "based on the analogous language in the FLSA." *Id.* The Supreme

Court reversed, holding that the words of the Oregon statute should be construed, instead, according to their plain meaning as adopted by the Oregon legislature. *Young v. State of Oregon*, 340 Or. 401, 406-08, 133 P.3d 915, 918-919 (2006).

Additionally, there is precedent set by the Oregon Court of Appeals regarding what authority should be applied regarding Oregon's wage and hour laws. In *Leonard v. Arrow-Tualatin, Inc.*, the Court of Appeals considered the definition of "work" in an employment context, and in doing so it looked to the definition discussed by the United States Supreme Court in *Tennessee Coal*, 321 U.S. 590, which was brought under the FLSA before the amendment by the PTPA. *Leonard*, 76 Or. App. 120, 708 P.2d 630 (1985). Importantly, the Oregon Court of Appeals in *Leonard* did not apply any FLSA cases decided after the adoption of the PTPA. This makes sense because the Oregon legislature specifically did not adopt the PTPA provisions, even though the Oregon wage and hour laws were codified after the FLSA was amended by the PTPA. There is no Oregon authority that suggests that post-PTPA authorities interpreting the FLSA should be considered when interpreting Oregon wage and hour laws.

Certification to the Oregon Supreme Court is not appropriate in this case because the answer to the question can be sufficiently determined by controlling precedent from the Oregon Court of Appeals, and from the plain language of the Oregon regulations. Post-PTPA authorities do not apply to interpret Oregon wage and hour laws.

## II.    Defendant's liability under Oregon wage and hour law.

On Sundays, someone from DL Reforestation would pick up Plaintiffs from their cousin's house in Medford, where they lived, and take them to DL headquarters in Medford.[2] At

---

[2] Plaintiffs do not claim that this travel time is compensable, and for good reason. This form of travel is clearly ordinary home-to-work travel or commute and therefore is not compensable under Oregon wage and hour law, nor is it compensable under the PTPA. OAR 839-020-0045(1) ("Normal travel from home to work is not work time."); 29 U.S.C. § 254(a)(1).

DL headquarters, Plaintiffs helped load the van with equipment and tools. They then traveled in this van to that week's temporary lodging location, usually a hotel, which could be several hours away. They often stopped at a gas station and assisted in buying fuel and supplies and loading these into the van as well. The remainder of the trip was spent at their own leisure, though they were required to follow Defendant's rules requiring a certain dress code and other policies, such as not putting their feet up on the seats.

During the workweek, Plaintiffs were required to report to a designated meeting place at the hotel or lodging site for the van to depart at a certain time each morning. They were transported out to a remote location in the forest, known by their supervisor and impossible to get to any other way. After their work in the forest was done, they loaded the equipment back into the vans and were transported back to the hotel.

Based on these facts, both parties move for summary judgment as to Plaintiffs' wage claims. For the reasons below, under Oregon law, Defendant must compensate Plaintiffs for their preliminary work activities on Sundays and for their travel time before and after each shift, from the hotel or temporary lodging to and from the remote forest worksite. Defendant must also compensate Plaintiffs for their Sunday travel time from Medford to the hotel or temporary lodging to the extent that the travel time cut across Plaintiffs' regular working hours on a non-working day. The Court does not find that these violations and potential violations of Oregon law are willful as a matter of law.

      **i.**      **Preliminary work activities are compensable.**

Plaintiffs' Sunday work activities are compensable under Oregon law. Loading tools and equipment, filling fuel cans, and loading them into the van, are all compensable work activities because Plaintiffs were required to be on the premises at a specific time, physically exerting

themselves in a way controlled by the Defendant and pursued primarily for the benefit of the

Defendant's business. *See Tennessee Coal,* 321 U.S. 590; *Armour & Co.,* 323 U.S. 126;

*Anderson,* 328 U.S. 680; *Leonard,* 76 Or. App. at 124, 708 P.2d at 632 ("Work is 'authorized'

when it is 'required or controlled by the employer.'"). While such "preliminary" work activities

are exempted from being compensable under the FLSA, they remain compensable under Oregon

law because Oregon did not adopt the PTPA, as discussed above.  Plaintiffs' motion is granted as

to this claim.

> ii.    **A dispute of fact prevents summary judgment on the issue of the
> compensability of Plaintiffs' "travel away from home."**

Plaintiffs' Sunday travel from headquarters to the remote lodging location keeps

Plaintiffs "away from home" for the entire week. Under the Oregon rules, travel away from

home is work time when it "cuts across the employee's workday." OAR 839-020-0045(5).[3]

However, "time that is spent in travel away from home outside of regular work hours as a

passenger on an airplane, train, bus, or automobile is not considered work time." *Id.*

Here, whether the travel time on Sundays "cut across" Plaintiffs' regular working hours is

disputed by the parties.   Plaintiffs assert that their "regular working hours" were 5AM to 3PM.

*See* Ledesma Decl., J. Cortes' and L. Cortes' Terms & Conditions 2017 and 2018, Pls Ex. 8, 8E,

9, 9E, 10, 10E, 11, 11E, and they contend that travel time on Sundays began at 11AM, J. Cortes

Decl. at ¶4, L. Cortes Decl. at ¶4. If this is true, any time spent travelling between 11AM and

3PM is compensable. However, the Defendant asserts that Plaintiffs' regular working hours were

---

[3] "Travel that keeps an employee away from home overnight is travel away from home. Travel away from
home is work time when it cuts across the employee's workday.  The employee is substituting travel for
other duties. The time is not only hours worked on regular working days during normal working hours,
but also during the corresponding hours on non-working days.  Time that is spent in travel away from
home outside of regular work hours as a passenger on an airplane, train, bus, or automobile is not
considered work time." OAR 839-020-0045(5)

7:30AM to 2:30PM, and travel time on Sundays began around 3PM. Lopez Decl., ¶ 6.  Under

these facts, the Sunday travel time did not cut across Plaintiff's regular working hours.  The

Court cannot resolve this dispute of material fact on motions for summary judgment; both

parties' motions are denied as to this issue.

### iii.    Travel from the hotel to the forest worksite is compensable.

Under Oregon law, travel from the temporary lodging to the remote forest location is

compensable.  First, while normal "home to work" travel is not compensable, temporary lodging

cannot be appropriately termed "home," particularly when the travel time from Plaintiffs' actual

residence to the Medford HQ is being considered "normal home to work travel."  If that is

Plaintiffs' normal commute, then the trip from hotel to worksite is something else. Therefore,

OAR 839-020-0045(1) does not apply to exclude this travel time.

Second, while post-PTPA case law has determined that employer-mandated and

controlled commute time is not compensable, that body of law does not apply to Oregon wage

and hour laws.  OAR 839-020-0045(3) states that, "where an employee is required to report at a

meeting place to receive instructions or to perform other work there or to pick up and carry tools,

the travel from the designated place to the work place is part of the day's work and must be

counted as hours worked regardless of any contract, custom or practice."  Here, it is undisputed

that Plaintiffs were required to arrive at a meeting place outside the hotel, load the vans, and

travel from there to the work place in the forest; thus this travel was part of the day's work and

must be counted as hours worked.

### iv.    The Defendant's violations were not "willful;" Plaintiffs' remedy and damages to be determined at trial.

Plaintiffs claim that the Defendant's failure to pay travel time was "willful."  Under

O.R.S. § 652.150, if an employer "willfully" fails to pay any wages or compensation of any

employee whose employment ceases, as provided in O.R.S. §§ 652.140 and 652.145, then, "as a penalty for the nonpayment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid..." *See Wilson v. Smurfit Newsprint Corp.*, 197 Or. App 648, 660, 107 P.3d 61, 69 (2005) (stating that O.R.S. 652.150 operates only when an employer "willfully" fails to meet obligations outlined in O.R.S. § 652.140). The determination of "willfulness" on part of an employer, is "not based on determination of 'good faith' or 'bad faith;'" rather, it is a question of whether the employer knows what it is doing, intends to do so, and is a free agent. *McCauley v. ASML US, Inc.*, 917 F.Supp.2d 1143 (2013) (citing *Vento v. Versatile Logic Sys. Corp.*, 167 Or. App. 272, 277, 3 P.3d 176, 178 (2000*)); see also Wilson*, 197 Or. App. at 660, 107 P.3d at 69; *Kling v. Exxon Corp.*, 74 Or App 399, 402-403, 703 P.2d 1021, 1023 (1985) (explaining that an employer's showing of good faith does not preclude finding of willful failure to pay wages due on termination of employment). Thus, if an employer has knowledge that circumstances triggering the obligation to pay have occurred, then its failure to pay is willful. *Wilson*, 197 Or. App. at 661, 107 P.3d at 70.

Here, the Court has determined that DL Reforestation failed to timely pay all wages owed to Plaintiffs. However, Plaintiffs acknowledge that there is no specific Oregon case law on point on these issues, to such an extent that they moved to certify a question to the Oregon Supreme Court. As discussed below, the FLSA does not provide for the same compensability as Oregon law, and if the post-PTPA case law applied, the Defendant's liability under Oregon law would be significantly reduced. Therefore, the Court does not find that the Defendant's conduct was willful as to those claims.

The only claim where Defendant's conduct could be "willful" is the failure to pay travel time for travel away from home. This liability attaches under both Oregon law and the FLSA, as discussed below, so there is no legal issue of first impression. However, this claim includes a material question of fact for a jury to resolve regarding whether the travel "cut across" Plaintiffs' working hours. If Plaintiffs prevail on this claim at trial, they may raise the issue of whether the Defendant's failure to pay wages for the Sunday travel time was willful.

**III.    Defendant's liability under the FLSA.**

The same facts discussed above apply to this section, but a distinction in the law reaches a different result. Under the FLSA and the PTPA, Plaintiffs' Sunday preliminary work activities and travel from the hotel to the remote forest worksite are not compensable. Defendant's motion is granted as to these two issues.  Plaintiffs' Sunday travel time is also not compensable as an integral and indispensable work activity.  However, as under Oregon law, a question of fact exists as to whether Plaintiffs' Sunday travel time is compensable as "travel away from home." This claim should proceed to trial.  If Plaintiffs prevail on this claim, they may raise the issues of willfulness and liquidated damages.

**a.  Preliminary work activities, travel from DL Reforestation Headquarters to the temporary lodging, and travel from the lodging to the forest worksite are not compensable as integral and indispensable work activities.**

In 1947, the FLSA was amended by the passage of the Portal-to-Portal Act. 29 U.S.C. §§ 251 – 262 (1947). The PTPA states that employers do not need to pay employees minimum wage or overtime wages for "(1) [w]alking, riding, or traveling to and from the actual place of performance of the principal activities which such employee is employed to perform, and (2) [a]ctivities which are preliminary to or postliminary to said activity or activities." 29 U.S.C. § 254(a)(1). However, "[a]ny activity that is 'integral and indispensable' to a 'principal activity' is

itself a 'principal activity' under [the Portal-to-Portal Act]" and must be compensated. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005).

In applying the Supreme Court's interpretation of the PTPA in *Alvarez*, the consensus among federal courts regarding travel time is that compensation is not owed unless actual work is accomplished during or by virtue of the travel at issue. *See Vega v. Gasper*, 36 F.3d 417 (5th Cir. 1994); *Smith v. Aztec Well Servicing*, 462 F.3d 1274 (10th Cir. 2006). Thus, commute time, even when lengthy, is not compensable. Even if an employer mandates or controls a particular transportation scheme, the commute is not necessarily rendered compensable. *Bennett v. McDermott Int'l, Inc., 855 F. App'x,* 932, 937 (5th Cir. 2021); *see also Aztec Well Servicing Co.*, 462 F.3d at 1288 ("a restriction imposed on the manner in which the plaintiffs can travel to and from their workplace is relevant only if it shows that their travel time was integral and indispensable to their principal activities.").

For instance, in *Aztec Well Servicing Co.*, the Tenth Circuit considered whether the plaintiffs spent "the majority of their travel time – which was somewhere between one and seven hours, round trip – engaged in actual work on behalf of the employer." 462 F.3d at 1290 While the plaintiffs sometimes did some incidental work before and after the drive – loading and unloading their personal safety equipment, and during the drive they discussed matters essential to their work, plaintiffs acknowledged that they "were generally free to spend their travel time as they wished: they could sleep, eat, read, listen to a portable radio, or discuss any subject of their choosing." *Id.* at 1291. The Court determined that, even if the plaintiffs engaged in some isolated work activities, which could potentially be compensable, the actual travel time, in which they could sleep or relax at their leisure, was not compensable.

Likewise, the Supreme Court has held that "preliminary" or "postliminary" work activities required by the employer and for the employer's benefit are not compensable if not integral and indispensable to "the productive work that the employee is employed to perform." *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 37 (2014) *cited by Balestrieri v. Menlo Park Fire Prot. Dist.*, 800 F.3d 1094, 1101 (9th Cir. 2015).

Here, the loading and unloading of equipment and tools was "preliminary" to the performance of the principal activities of forestry management. Plaintiffs have asserted that this work was consistent, i.e., they performed it prior to every Sunday travel day, but the evidence that it was integral and indispensable to the job they were hired to do is lacking in the record. There is no evidence that loading and unloading equipment was part of "the productive work that Plaintiffs were employed to perform." While the tools and equipment surely needed to be transported to the worksite, Plaintiffs themselves were not responsible for the driving or the transporting of these items. The Defendant paid specific drivers for that task. Plaintiffs' declarations state that the "total time" for these activities "varied greatly." There is no indication of how much time was spent doing the loading and unloading, and no evidence that it was indispensable. These preliminary work activities are not compensable under the FLSA.

Moreover, even if the preliminary activities of loading and unloading the vans were integral to the forestry management work Plaintiffs were hired to do, the Sunday travel time during which Plaintiffs could eat, sleep, listen to music, drink coffee, and otherwise relax at their own leisure, is not compensable as work-time under the FLSA because, like the plaintiffs in *Aztec Well Servicing Co.*, there is no evidence that any work was accomplished during or by virtue of the travel undertaken by Plaintiffs.

The travel from the lodging to the worksite is not compensable for the same reasons: traveling to the worksite was not integral and indispensable to the work Plaintiffs were hired to do, and no work was accomplished during or by virtue of the travel. Plaintiffs assert that transporting workers from the temporary lodging and out to the remote forest worksite was indispensable and integral to the work they were hired to do because, by its very nature, any work in the remote forest location would have been impossible without that transportation. However, this is true of any occupation with an inconvenient or inaccessible location or a lengthy commute. Even employer-mandated and -controlled transportation does not transform travel time into work time under the PTPA and FLSA. Travel time is only compensable as work time under the FLSA if actual work was accomplished during or by virtue of the travel, or if it qualifies under a specific provision, such as "travel away from home," as discussed below. Defendant is entitled to summary judgment on these issues.

**b. A dispute of fact prevents summary judgment on the issue of the compensability of Plaintiffs' "travel away from home."**

Under the FLSA, "travel away from home" is compensable when it cuts across (1) an employee's workday or (2) an employee's regular working hours on nonworking days. 29 C.F.R. § 785.39. Similar to the Oregon rules, this form of travel is not compensable when it occurs outside of the employee's regular working hours, whether on working or nonworking days. *Id.* Here, as discussed above regarding the defendant's liability under Oregon law, whether the travel time on Sundays "cut across" Plaintiffs' regular working hours is disputed by the parties. The Court cannot resolve this dispute of material fact on motions for summary judgment; both parties' motions are denied as to this issue.

**c. Whether the Defendant's alleged violation of the FLSA was willful, and whether the Plaintiff is entitled to liquidated damages are questions of fact for the jury.**

A violation of the FLSA is "willful" if the employer knew or showed reckless disregard for the issue of whether the employer's conduct was prohibited under FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988). A repeat violation after having been caught previously will be considered "reckless." *See e.g., Reich v. Bay*, 23 F.3d 110, 117 (5th Cir. 1994) (finding that an employer was "reckless" when the local wage and hour office contacted the employer informing its representative that its overtime practices violated FLSA).

For violations of FLSA's overtime wage provision, an employer is required to pay the employees any unpaid wages and an additional equivalent amount as liquidated damages pursuant to 29 U.S.C. § 216(b). Liquidated damages are mandatory, unless the employer shows that it acted in good faith and had reasonable grounds to believe it was not in violation. 29 U.S.C. § 260; *Local 246 Utility Workers Union of Am. v. S. Cal. Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996) (citing *EEOC v. First Citizens Bank of Billings*, 758 F.2d 397, 403 (9th Cir. 1985)).

Plaintiffs have raised a question of fact as to this issue by submitting evidence that Defendant has been found to have violated the FLSA for failure to pay travel time on a prior occasion. However, Plaintiffs have not shown that the Defendant has violated the FLSA as a matter of law in this case. Therefore, the Court does not reach the question of whether an FLSA violation was willful or whether Plaintiffs are entitled to liquidated damages. If the Plaintiffs prevail at trial, they may present evidence as to these issues at that time.

## IV. Defendant's liability under AWPA.

Plaintiffs bring a variety of claims under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801, et seq. Plaintiffs move for summary judgment on their AWPA claim for failure to pay travel time wages under state law. This motion is granted.

The defendant moves for summary judgment as to all of the AWPA claims. This motion is granted in part and denied in part.

### a. AWPA applies to the parties' working arrangement in this case.

AWPA was enacted in 1983 to "remove the restraints on commerce caused by activities detrimental to migrant and seasonal workers," as well as "to assure necessary protections for migrant and seasonal agricultural workers[.]" 29 U.S.C. § 1801. AWPA replaced the Farm Labor Contractor Registration Act of 1963 ("FLCRA") that had "failed to aid exploited agricultural laborers[.]" *Morante-Navarro v. T& Y Pine Straw, Inc.*, 350 F.3d 1163, 1168 (11th Cir. 2003). A number of changes were made to FLCRA to remedy its weaknesses, including adding a third definition of "agricultural employment" to 29 U.S.C. § 1802(3). *Id.* at 1169. These changes were later incorporated into AWPA when AWPA replaced FLCRA. *Bresgal v. Brock*, 843 F.2d 1163, 1165 (9th Cir. 1988). The Fifth, Ninth, and Eleventh Circuits have interpreted this amendment as broadening AWPA's coverage to forestry workers regardless of the location of their work and to include activities not previously covered by FLCRA. *Morante*, 350 F.3d 1168.

Defendant DL attempts to distinguish the work done by the Plaintiffs as "forestry management" or "environmental management"[4] and therefore not "agricultural" work, or even traditional "forestry" work as contemplated by the FLCRA amendments. However, in *Bresgal v. Brock*, the Ninth Circuit held that forestry workers who engage in "predominantly manual forestry work, including but not limited to tree planting, brush clearing, precommercial tree thinning and fire-fighting" were covered under AWPA. 843 F.2d 1163, 1172 (9th Cir. 1987).

---

[4] Defendant asserts that DL Reforestation's core activity is to clear the land of trees (typically pine trees) to achieve environmental and land management objectives. The work of DL's forestry workers is to cut down pine trees with a chain saw and then pile them up. They do not plant seedlings or perform any other activities related to the cultivation of trees for harvest. Defendant claims that the work is best characterized as "land management." JMCD., Tr. at 33, ll. 1-12.

Recognizing that "forestry workers are not commonly viewed as agricultural workers," *id.* at

1166, the court in *Bresgal* nonetheless interpreted the term "agriculture" broadly in order to

effectuate the express intent of Congress to curtail abuse of migrant workers by labor

contractors: "Congress' primary concern was the welfare of migrant laborers, particularly aliens,

who are subject to abuse by labor contractors. The purpose of the Act was to regulate labor

contractors wherever they operate." *Id.* Here, Plaintiffs are indisputably migrant seasonal forestry

workers; they are foreign nationals working under seasonal H-2B visas, who could be subject to

abuse by labor contractors, as alleged in this case.  Plaintiffs may bring their claims under

AWPA.

### b.  The Defendant's failure to pay Plaintiffs' wages under Oregon law constitutes a violation of AWPA.

As discussed above, Court has determined that the Defendant failed to pay Plaintiffs in

accordance with Oregon law for hours worked on Sunday and travel time between the hotel and

the forest worksite.  Other courts have determined that a Defendant may be held liable under

AWPA for violations of state wage and hour laws. *Medrano v. D'Arrigo Bros. Co.*, 125

F.Supp.2d 1163, 1167 (N.D.Cal.2000) (discussing a number of other cases implicitly suggesting

this conclusion, and explicitly agreeing); *Valenzuela v. Giumarra Vineyards Corp.*, 619 F. Supp.

2d 985, 989 (E.D. Cal. 2008) ("Wages may be defined by federal, state, and local laws. Failure

by an employer to pay those wages constitute violations of AWPA.").  Courts in this district have

agreed with this reasoning as well. *See Hernandez v. Siri & Son Farms, Inc.*, No. 6:20-CV-

00669-MK, 2021 WL 4999022, at *5 (D. Or. Sept. 30, 2021), report and recommendation

adopted, 2021 WL 4993475 (D. Or. Oct. 27, 2021). Therefore, the Defendant's failure to pay

Plaintiffs' wages under Oregon law constitutes a violation of AWPA. The failure to record these

compensable hours is also a violation of AWPA.

The Court has not determined that the Defendant has violated the FLSA as a matter of law. Thus, for now, there is no concern for a recovery "in triplicate" as asserted by the Defendant. Should Plaintiffs prevail at trial on the FLSA and Oregon law wage claim regarding their Sunday travel time, the Defendant may raise the issue of duplicative remedies at that time.

### c. The Defendant is entitled to summary judgment as to Plaintiffs' AWPA claim for inadequate housing under 28 U.S.C. 1823(a).

The Defendant's motion for summary judgment as to Plaintiffs' AWPA claim for inadequate housing under 28 U.S.C. 1823(a) is granted. That provision provides that:

> Except as provided in subsection (c), each person who owns or controls a facility or real property which is used as housing for migrant agricultural workers shall be responsible for ensuring that the facility or real property complies with substantive Federal and State safety and health standards applicable to that housing.

28 U.S.C. 1823(a). A person or entity controls housing if they are "in charge of or have the authority to oversee, manage, superintend or administer the housing facility or real property either personally or through an authorized agent or employee." 29 C.F.R. § 500.130(c).

Other courts have found that employers or their agents that rent hotel rooms on their laborers' behalf do not necessarily control that housing, even if they intercede between the workers and the hotel or motel. One court explained: "A person who only controls the occupants and not the physical facility could not directly effectuate the maintenance of, inter alia, plumbing, electricity, sanitation, fire safety equipment and cleanliness in compliance with applicable federal and state standards." *Renteria-Marin v. Ag-Mart Produce, Inc.*, 537 F.3d 1321, 1327 (11th Cir. 2008).

In *Renteria-Marin,* the district court originally determined that the employer did have control over rented motel facilities because ultimate authority over the facility was unnecessary because the purpose of the Act was to broadly protect workers' housing. The district court

determined that subsidizing the rooms, plus assigning the workers to each room, mediating

disputes, and enforcing rules of occupancy, all demonstrated sufficient "control." *Renteria-*

*Marin v. Ag-Mart Produce, Inc.*, 488 F. Supp. 2d 1197, 1213 (M.D. Fla. 2007), *aff'd in part,*

*rev'd in part and remanded*, 537 F.3d 1321 (11th Cir. 2008). The Eleventh Circuit, however,

reversed on this specific issue, noting that neither the employer nor its agents "were authorized to

repair or maintain any of the physical facilities at the motels," nor were they authorized to

"remodel or reconstruct the facilities," which would have been necessary to provide adequate

laundry and food preparation facilities under AWPA. *Id.* The court explained the distinction

between "providing housing," and "controlling a facility," as required under section 1823(a):

> The legislative history of the AWPA indicates that Congress
> intended that the use of the term "provides housing" to be inclusive
> of those who procure housing. H.R.Rep. No. 97–885, at 15 (1982),
> reprinted in U.S.C.C.A.N. 4547, 4561 ("The use of the term
> [provides] includes, but is not limited to situations where an entity
> makes housing available to workers, procures housing for the
> worker's use, or furnishes housing."). Thus it is apparent that if
> Congress had intended to apply the requirements of 29 U.S.C. §
> 1823(a) to those who only procure housing for migrant workers,
> they would have used the more comprehensive phrase "provides
> housing" rather than "controls a facility or real property which is
> used as housing."

*Id.* at 1328. While this case is not mandatory authority in the Ninth Circuit, the reasoning is

persuasive.

Here, Plaintiffs allege that Defendant provided housing by renting out rooms at hotels or

motels near the forest worksites. Lopez Corp. Depo 62:24-63:9; L. Cortes Decl. ¶ 4; J. Cortes

Decl. ¶ 4. Defendant's foreman supervised Plaintiffs' daily use of the hotels and motels where

they stayed. Lopez Corp. Depo 83:19-84:1. Defendant's foreman would instruct workers to

divide themselves into groups, and then assigned each group a room by handing them a key. L.

Cortes Decl. ¶ 5; J. Cortes Decl. ¶ 5. If Plaintiffs had any complaints about the rooms, they

brought them to their foreman, not the hotel staff. L. Cortes Decl. ¶ 6; J. Cortes Decl. ¶ 6.

Plaintiffs do not allege that the Defendant had any control or ultimate authority over the motel

facilities themselves. The Defendant is entitled to summary judgment on this claim.

### d. The Defendant's motion for summary judgment is denied as to the remaining AWPA claims.

The Defendant asserts that the remaining AWPA claims are unsubstantiated, but the

motion is similarly void of substantive evidence opposing the allegations in the First Amended

Complaint. On a motion for summary judgment, the moving party has the initial burden of

showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). This burden has not

been carried as to the remaining AWPA claims.

Thus, Plaintiff is entitled to summary judgment under AWPA for the failure to pay

Plaintiffs' wages under Oregon law and the failure to record those compensable hours.

Defendant is entitled to summary judgment regarding the AWPA housing claim under Section

1823(a). The rest of the AWPA claims remain for trial.

### V.    Summary judgment as to Plaintiffs' claims under the Oregon Contractor Registration Act is denied.

Plaintiffs claim that the Defendant violated the Oregon Contractor Registration Act, ORS

658.440, by:

1. failing to pay Plaintiffs the agreed upon hourly wage, and therefore failing to comply with all the terms of the contract it entered into in its capacity as a farm labor contractor.
2. failing to furnish Plaintiffs with adequate and/or accurate written disclosures, at the time of hiring, recruiting, soliciting, or supplying, communicating to Plaintiffs the required descriptions listed under O.R.S. § 658.440(1)(f)(A)-(I).
3. providing housing to Plaintiffs during their employment that failed to substantially comply with the health, safety, or habitability of the housing.

The Defendant moves for summary judgment as to these claims for all of the same reasons given above regarding the wage claims and written disclosures. Thus, for all of the reasons above, the Court finds that the Defendant is not entitled to summary judgment, as it did fail to pay Plaintiffs their proper wages for work and travel. The Defendant has not provided any evidence to oppose Plaintiffs' claims that the Defendant provided inadequate housing or failed to provide adequate written disclosures. Summary judgment as to the OCRA claims is denied.

## VI.   The Defendant's motion for summary judgment on Plaintiffs' Workers' Compensation Retaliation claims is denied.

Plaintiffs allege that the Defendant retaliated against them for invoking the Workers' Compensation system, in violation of O.R.S. §§ 659A.043 and 659.040. FAC ¶ 5. It is undisputed that, after the chainsaw accident where Lorenzo Cortes was seriously injured, he returned to work for the rest of the season, but the Defendant chose not to re-hire him through the H-2B program the following season. Plaintiffs claim the failure to re-hire Lorenzo Cortes was due to his accident and his Workers' Compensation claim. Similarly, Plaintiffs allege that Jose Manuel Cortes suffered an on-the-job injury when he witnessed the chainsaw accident and became traumatized by trying to prevent his brother from bleeding out. He became extremely anxious and had trouble sleeping, and ultimately returned to Mexico. Jose Manuel Cortes was not re-hired the following season, and Plaintiffs allege the same claim as to his circumstances.

In order to survive summary judgment on a Workers' Compensation retaliation claim in Oregon, Plaintiffs must present a prima facie case consisting of three elements: "(1) Plaintiff invoked, applied for benefits, or utilized the workers' compensation system; (2) Defendant took a material adverse employment action with respect to Plaintiffs' terms or conditions of employment; and (3) a substantial factor in Defendant's decision to take the action was that Plaintiff invoked, applied for benefits or utilized the workers compensation system." *Williams v*

*Freightliner LLC,* 196 Or App 83, 90, 100 P.3rd 1117, 1121 (2004). The amount of evidence

necessary to establish a prima facie case is "minimal." *Chuang v. Univ. of Cal. Davis, Bd. of*

*Trustees*, 225 F.3d 1115, 1124 (9th Cir.2000).  The Court applies the burden shifting framework

established *in McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), to claims

brought under O.R.S. § 659A.040. *Davis v. Tri-Cty. Metro. Transp. Dist. of Oregon*, 45 F. Supp.

3d 1222, 1241 (D. Or. 2014) *(citing Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080,

1090–94 (9th Cir.2001)).  Both plaintiffs have established the minimal evidence necessary to

proceed with a prima facie case of retaliation.

### a. Jose Manuel Cortes-Diaz's Claim

Plaintiff Jose Manuel Cortes' raises a question of material fact as to each element of

retaliation.  First, Jose Manuel raises a question of fact as to whether he "invoked" the Workers'

Compensation system.  "'Invoke' as used in ORS 659A.040, includes but is not limited to, a

worker's reporting of an on-the-job injury or a perception by the employer that the worker has

been injured on the job or will report an injury." OAR 839-066-0105 (7).  In *McPhail v.*

*Milwaukie Lumber Co.,* the Oregon Court of Appeals found that there was a question of material

fact for a jury regarding whether the plaintiff had "invoked" Workers' Compensation when the

record showed "that plaintiff notified [his employer] ... that he was having stress at work and

that his physician had told him that the stress was the cause of his stomach problems." 165 Or.

App. 596, 602, 999 P.2d 1144, 1148–49 (2000).

Here, Plaintiff Jose Manuel Cortes asserts that the trauma of witnessing his brother's on-

the-job-injury was an injury itself.  His declaration states that he met with Armando Lopez, one

of the co-owners for the Defendant: "I reported that I could not sleep after seeing my brother

bleeding out in the forest.  I asked to receive medical treatment.  Mr. Lopez denied any

responsibility in having to provide medical treatment." Decl. J. Cortes ¶ 11. His testimony at

deposition was similar: "So they said I also suffered a trauma when my brother got hurt and I got

nervous when I was working and I couldn't sleep." Jose Manuel has therefore raised a question

of fact as to whether or not the Defendant perceived that he had suffered a work-related injury

and intended to seek medical care for such an injury.

Second, "[r]efusal to hire or promote" an employee because the employee invoked the

worker's compensation system is considered an unlawful employment action under ORS §

659A.040. *Davis*, 45 F. Supp. 3d at 1241 (citing Or. Admin. R. 839–006–0117). It is undisputed

that Plaintiff Jose Manuel Cortes had worked for the Defendant for a number of seasons before

his brother's accident. He voluntarily left back to Mexico before the end of that season, and then

he was not re-hired the following season. The Defendant's refusal to hire him back is potentially

actionable retaliation.

Third, Plaintiff Jose Manuel Cortez has raised a question as to whether the retaliatory

action against him was taken because he invoked the Workers' Compensation system. He must

show that his invocation of the Workers' Compensation system was a "substantial factor" in the

Defendant's alleged adverse actions. *Herbert*, 230 Or.App. at 726, 218 P.3d 542; *see also*

*Anderson*, 26 F.Supp.3d at 1026, 2014 WL 2619641, at *5. "[T]o be a substantial factor, the

employer's wrongful purpose must have been 'a factor that made a difference' in the [adverse

employment action]." *Estes v. Lewis & Clark Coll.*, 152 Or.App. 372, 381, 954 P.2d 792 (1998)

(*quoting Nelson v. Emerald People's Util. Dist.*, 116 Or.App. 366, 373, 840 P.2d 1384 (1992),

aff'd in part, rev'd in part, 318 Or. 99, 862 P.2d 1293 (1993)). The degree of proof necessary to

establish a prima facie case of a causal link on summary judgment is "minimal" and a plaintiff

need only prove an inference of discrimination. *Snead*, 237 F.3d at 1089–91. A causal

connection can be established either (1) "indirectly, by showing that the protected activity was followed closely by discriminatory treatment," or (2) "directly, through evidence of retaliatory animus directed against a plaintiff by the Defendant." *Boynton—Burns v. Univ. of Or.*, 197 Or.App. 373, 380, 105 P.3d 893 (2005).

Here, a causal connection is established indirectly by temporal proximity. Plaintiff Jose Manuel Cortes told his employer that he was suffering the mental health effects of witnessing his brother's traumatic accident, that he needed to seek medical care, and ultimately that he needed to return to Mexico in the Fall of 2018. Taking the facts in the light most favorable to Plaintiff, the failure to rehire him for the immediately following season, April 2019, when he had previously been re-hired for multiple seasons in a row, establishes a causal link between his notice of an on-the-job injury, and the discriminatory treatment.

The Court agrees with the Defendant that the evidence proffered by the Plaintiff for each element is tenuous. However, the Defendant does not offer any legitimate, non-discriminatory reason that it did not re-hire Jose Manuel Cortes, and the Defendant even suggests that he was a very capable worker until his brother's accident. Plaintiffs assert that they eventually sent a text message to a representative of the Defendant to inquire about why they had not been re-hired. The representative responded, "La verdad que no hubo muchas visas este año," which translates to, "The truth is there were not as many visas this year." Plaintiff disputes this assertion, noting that the Defendant applied for just as many visas in 2019 as the two years prior; the Defendant does not actually raise this issue in the briefing, and therefore the Court will not consider it a legitimate, non-discriminatory reason at this stage. Taking all of the evidence in the light most favorable to the Plaintiff, Jose Manuel Cortes has raised a prima facie case of retaliation under O.R.S. § 659A.040.

### b. Lorenzo Cortes-Diaz

It is undisputed that Plaintiff Lorenzo Cortes invoked the Workers' Compensation system. He was injured on the job, filed a worker's compensation claim, received benefits and then returned to work for DL until the season ended. He submits that he failed to be rehired for the following season, April 2019, in retaliation for engaging in the protected activity of seeking Workers' Compensation benefits. All of the same conclusions above apply here as to the first and second elements. As to the third element, the Defendant claims that it had a legitimate, non-discriminatory reason not to re-hire Lorenzo Cortes, stating that:

> Plaintiff Lorenzo was always a marginal worker. Depo. Armando Lopez (Ex. 5). Defendant offered him work only because Plaintiff Jose Manuel Cortes Diaz was so capable. *Id*. As Plaintiff Jose Manuel's performance declined, the rationale for employing Plaintiff Lorenzo Cortes Diaz evaporated.

Plaintiff Lorenzo Cortes disputes this characterization, asserting that he had been hired for multiple seasons in a row and that he had never been told that his performance was substandard. Moreover, as discussed above, when Plaintiffs eventually inquired as to the reason they were not re-hired, they were told that there were not as many visas that year. The discrepancy in proffered reasons raises a sufficient question regarding whether the non-discriminatory reason now offered by the Defendant is pretextual. Therefore, taking all facts in the light most favorable to the Plaintiffs, they may proceed to trial on these claims for Workers' Compensation retaliation.

### ORDER

For the reasons above, Plaintiffs' Motion to Certify (#79) is DENIED. Plaintiffs' Motion for Partial Summary Judgment (#47) is GRANTED in part and DENIED in part. The Defendant's Motion for Summary Judgment (#45) is GRANTED in part and DENIED in part.

**Plaintiffs' motion is granted as to the following claims:**

1. Plaintiffs' wage claims under Oregon law for preliminary work activities and travel from the temporary lodging to the forest worksite.
2. Plaintiffs' AWPA claims for the failure to pay Plaintiffs' wages under Oregon law and the failure to record those compensable hours.

**The Defendant's motion is granted as to the following claims:**

1. Plaintiffs' wage claims under the FLSA for preliminary work activities and travel from the lodging to the forest worksite.
2. Plaintiffs' AWPA claim for inadequate housing under section 1823(a).

The remaining claims and questions of fact shall proceed to trial.

It is so ORDERED and DATED this 21 day of March, 2022.

MARK D. CLARKE
United States Magistrate Judge